NATIONAL BANK OF COMMERCE v. WILLIAMS et al.

(Circuit Court of Appeals, Fifth Circuit. December 10, 1907.)

No. 1,656.

BANKRUPTCY—LIENS—CONDITIONAL SALE CONTRACTS.

A series of notes or contracts executed by a lumber company on the delivery to it of rails and other materials for the construction of a logging railroad, each calling for the payment of a sum stated, describing the property delivered, and providing that the title should remain in the seller until full payment was made, and that any equity therein acquired by the maker by reason of partial payments should stand pledged for the remainder due and be held by the maker as trustee, were valid and enforceable contracts under the law of Louisiana, and, on the bankruptcy of the company after having made partial payments, constituted a lien on the property described for the remainder due thereon.

Petition to Superintend and Revise Proceedings of the District Court of the United States for the Western District of Texas.

M. W. Davis and V. M. Clark, for petitioner.

C. A. Keller, George R. Gillete, and William C. Berry, for respondents.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. On May 1, 1903, J. E. Brady, of the city of Toomey, state of Louisiana, had lumber mills at that place known as the "Toomey Lumber Mills." On the date above named he made, at Houston, Tex., with H. E. Miller, a representative of Walter A. Zelnicker Supply Company, a contract to buy 1¼ to 1¾ miles of 20-relay iron rails, and such splices as are with them, at prices

named f. o. b. Fants, Tex., H. E. Miller's inspection to govern, with freight allowed to Toomey, La.; one 13-ton narrow-gauge Shay locomotive, at a price named, Walter A. Zelnicker Supply Company inspection to govern; with other material described in the contract; providing for a cash payment on acceptance of the contract, and for the giving of four notes for the balance of the purchase price, specifying dates, etc.; and further providing that "for the purpose of securing the payment of said notes, the buyer is to execute and deliver to the seller, at the time of tender of bill of lading as aforesaid, a deed of trust or mortgage on the property covered by this contract." On December 17, 1903, the Brady-Stein Lumber Company, writing from San Antonio, Tex., to the Walter A. Zelnicker Supply Company, St. Louis, Mo., say:

"We take pleasure to notify you that we have completed the organization of the undersigned stock company which has assumed all assets and liabilities of Mr. J. E. Brady at Jacksonville, as shown on the books of his plant known as the Toomey Lumber Mills at that place. Mr. Brady will remain with the company as director and superintendent and as the largest individual stockholder of the same."

On February 1, 1904, at Jacksonville, La., Walter A. Zelnicker Supply Company contracts in writing to sell, and Brady-Stein Lumber Company, of the city of Jacksonville, state of Louisiana, contracts to buy certain steel rails described, and splices complete with bolts, at prices named f. o. b. Pittsburg, Pa., subject to acceptance by Walter A. Zelnicker; providing for the payment of one-fourth of the price on tender of bill of lading, and for, at the same time, giving three notes for the balance of the purchase price, specifying the due dates. The contract of May 1, 1903, and of February 1, 1904, both in writing, provide that, "for the purpose of securing the payment of said notes, the buyer is to execute and deliver to the seller, at the time of tender of bill of lading as aforesaid, deed of trust or mortgage on the property covered by this contract." Early in February, 1905 (the exact date not shown), the Brady-Stein Lumber Company made a general assignment to a Mr. Gross for the benefit of its creditors. Thereupon an involuntary petition in bankruptcy was filed against the company, and the referee appointed the respondent, Mason Williams, receiver of the company's estate, and he, as such receiver, took charge of the Toomey Lumber Mills and the tramway in connection therewith. Brady-Stein Lumber Company was duly adjudged a bankrupt on the 16th day of February, 1905, and Mason Williams was then appointed trustee and qualified. On March 4, 1905, the Galveston Hat & Shoe Company, one of the interveners and respondents, appeared as a creditor and asked and obtained certain relief, and on the same day, with the consent of that creditor (and no other creditor objecting), the referee made an order authorizing and directing the trustee to operate the mill property and tramway as a going concern. On the 3d of October, 1905, the petitioner filed with the referee its application to have the property involved in this cause set aside to it upon the following state of facts, which having verified by the record, we adopt from the petitioner's brief, viz.: On December 1, 1903, September 1, 1904, and

May 25, 1904, the Brady-Stein Lumber Company, through itself and J. E. Brady, executed its several written obligations to Walter A. Zelnicker Supply Company, of St. Louis, by the terms of which said Walter A. Zelnicker Supply Company bound itself to deliver, and did thereafter deliver, material described in the written obligations to the bankrupt at its place of business in Calcasieu parish, in the state of Louisiana, where the bankrupt then conducted a mill for the manufacture of lumber. This material was used by the bankrupt in the construction of a tramway which was built in connection with the mill and for use in hauling logs to the mill. These writings obligated the bankrupt to pay to Walter A. Zelnicker Supply Company, or order, the purchase money for the materials in several different installments at the times stipulated, and in which is contained the following provision:

"It is agreed and understood that the above described property is to remain the property of the payee, or its assignee, and whatsoever equity we may be entitled to in same by virtue of any payments thereon, is hereby pledged to said payee, or its assignee, and held by us as their trustee until all of said notes shall have been paid. In the event of any of said notes not having been paid at maturity, the payee or its assignee may, without further notice to us and without any liability whatsoever for trespass, take possession of the above said property for its own benefit."

The first clause in each of these writings is in the nature of a promise to pay to the order of the Walter A. Zelnicker Supply Company certain sums with interest at the National Bank of Commerce in St. Louis, Mo. (except one payable at New Orleans), providing that, if placed with an attorney for collection, the makers agree to pay 10 per cent. additional on the amount as attorney's fees, and that the makers and indorsers each and severally waive presentation for payment, protest, notice of protest, and nonpayment, each reciting also that it is one of a series of like tenor and date given to secure certain sums of money, describing the materials. Thereafter the payee transferred and assigned, for a valuable consideration, to the petitioner each and all of these notes, as well as all of the payee's right, title, and interest in and to the property therein described. The bankrupt defaulted in the payment of $2,971.37 of the purchase money which was due before the adjudication in bankruptcy. The bankrupt had possession of the property involved in this suit at the time it made the general assignment referred to, and appears to have had possession at the time the referee appointed respondent Williams receiver, who, as such receiver and as trustee, held possession thereof until the same was sold by consent of parties and order of the referee hereafter noticed. There appear to have been nine of these notes executed, eight of which are claimed by the petitioner, and one was held by the W. A. Zelnicker Supply Company of Mobile. All of the notes, except two, became due before the adjudication of bankruptcy on February 16, 1905; one of each series of notes was recorded in the parish of Calcasieu, La. In addition to its claim for the property, and altogether subject thereto, the petitioner pleaded in the alternative, in a second count, for the enforcement of its lien upon the property as a secured claim for the amount remaining unpaid thereon. Before the hearing of this applica-

tion by the referee, a sale of the property in controversy for the sum of $4,250 was approved by the referee, and his order confirming the sale was duly entered, and the proceeds are now in the hands of the trustee awaiting the determination of this litigation. The petitioner claims all of the property which brought the above sum (having fur-- nished all of the material which went into the construction of the property sold), except that material which is described in the note dated September 30, 1903, payable at the New Orleans National Bank, New Orleans, La. It is conceded by the petitioner that this material was furnished by the Walter A. Zelnicker Supply Company of Mobile, a different corporation from the payee in all the other notes. The interest of the Alabama corporation is determined by the decree of the referee, who applied to it the sum of $681.28 out of the proceeds of the sale of the property.

The trustee in bankruptcy replied to the application of the petitioner with general and special demurrers and special answer and general denial, disputing its right to recover on either its first or second count. The Galveston Hat & Shoe Company and C. M. Campbell & Sons, by leave of the referee, intervened and presented pleadings substantially the same as the pleadings of the trustee, except that each sought the enforcement of an alleged lien upon the property accruing after the adjudication of bankruptcy. On the hearing before the referee it was ordered that the proceeds of the sale, except the amount awarded to Walter A. Zelnicker Supply Company of Mobile, should be turned over to the petitioner. From this order the trustee and interveners each filed a petition for review before the District Court. Upon the record made, the court set aside the order of the referee and denied any relief to the petitioner. The claimant brings the case before us on an appeal from, and on a petition to superintend and revise, the action of the District Court, and presents an agreement of counsel specifying, among other things, "that the petition to revise any matters of law filed as aforesaid in this cause may be consolidated with the appeal heretofore perfected as aforesaid, as they both involve the same matters and are identical in all respects, except as to the method of bringing the cases before said Circuit Court of Appeals." In this court, the trustee, by his attorney, has filed a motion to dismiss the petition to superintend and revise, on the ground that the case is not a proceeding in bankruptcy, but a proceeding on a petition filed by an adverse claimant to recover property from a trustee in bankruptcy, and is, therefore, a controversy "arising in bankruptcy proceedings," reviewable by appeal only.

From our examination of the record, we are satisfied that there is no substantial conflict in the evidence, and that it sufficiently establishes the material facts in the case, leaving only questions of law for our determination. It may be that the petitioner might have had a plenary suit on the cause of action it states, and have prosecuted it as a controversy arising in bankruptcy proceedings, and, if it were necessary in order to do complete justice between the parties, we might give the case it has submitted the benefit of such a construction; but, in our opinion, we may settle the questions at issue on the petition to superintend and revise. Therefore the motion to dismiss that petition is re-

fused, and the appeal is dismissed. There is nothing in the pleadings or the proof to raise a doubt in our minds that the writings presented by the petitioner in support of its claim constitute the contract between it and the bankrupt. It seems clear to us that the property described in these writings went into the construction of the tramway or the logging road that was sold, and that no other property of the nature described in these writings was used in its construction; that, at the time of the adjudication in bankruptcy, the price had not been fully paid; that the contracts were made in Louisiana; that the goods were to be used at a designated place in Louisiana, and for a designated purpose; and that the provision that the property described should remain the property of the payee or its assigns, and whatever equity the buyer might be entitled to therein by virtue of any payments thereon shall be pledged to the payee or its assigns, and held by the buyer as their trustee until the whole price had been paid, is a provision inserted by the parties having in mind the law of Louisiana permitting and providing for the enforcement of such a bargain, and should be upheld by the courts. If nothing had been paid on the price, the payee or its assigns could, under the Louisiana law and agreeably to the terms of the stipulation, take possession of and remove the property for its own benefit as its own. Baldwin v. Young, 47 La. Ann. 1466, 17 South. 883; Mortee v. Roach's Syndic, 8 La. 83; Rev. Civ. Code La. tit. 7, c. 4, art. 2457; Id. c. 5, tit. 7, art. 2471. As fully shown by the indorsements on the notes themselves, there have been partial payments made thereon, and the record shows that pending this litigation, by consent of the parties, the property has been disposed of, and its proceeds in money are held by the trustee subject to the decision of the court. A part of the debt had not matured on the 16th of February, 1905, when the adjudication of bankruptcy was had. On October 5th of the same year the claimant presented its case, substantially as it presents it now, to the referee, and obtained judgment in its favor. Since then these proceedings have been pending. The court of bankruptcy was fully advised as to all the features of the case; that the bankrupt had obtained possession of the property under the contracts we are now considering, and had not fully paid for it. The amount paid was fully and clearly stated; the amount remaining unpaid was a matter of calculation. Whatever construction we might be disposed to put upon the terms of the writings, we could hardly hold that the bankrupt itself or its trustee could hold this property or the proceeds of its sale under the consent agreement without paying fully the unpaid portion of the purchase money. Some of the purchase money having been paid, and the whole of the property having been converted into money, and the stipulation being that the equity which the purchaser acquired in the property by virtue of any payments thereon was pledged to the payee or its assigns and held by the debtor as their trustee until the whole of said price should be paid, it would be manifestly inequitable to suffer the claimant to recover more than the full amount of the unpaid purchase money. It, therefore, seems to us to be substantially immaterial whether the claimant shall be permitted to recover under the first count of his petition or under the second.

The construction of 57n forbidding proofs subsequent to one year after adjudication, etc., for which the trustee contends, is too narrow. Hutchinson v. Otis, 190 U. S. 552, 23 Sup. Ct. 778, 47 L. Ed. 1179.

We therefore adjudge that the petitioner is entitled to receive, and should be awarded, so much of the proceeds of the sale of the property as shall be sufficient to satisfy the unpaid portion of the purchase price, with interest thereon at the rates stipulated in the contracts and accruing up to the date of the confirmation of the sale of the property and the placing of the proceeds thereof in the hands of the trustee to be held by him subject to final adjudication in this case. The petitioner shall recover costs in this court against all the respondents and costs in the District Court, except such as were incurred on the respondents' petition to review the decree of the referee entered on May 24, 1906, and vacated by the District Court January 9, 1907. And it is so ordered.